NOTE: CHANGES MADE BY THE COURT

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAREY R. CARPENTER,<br><br>    Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. CV 15-0792-RAO<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.
## INTRODUCTION

Plaintiff Carey R. Carpenter ("Plaintiff") challenges the Commissioner's denial of his application for social security disability income ("SSDI") benefits under Title II of the Social Security Act[1], and his application for supplemental security income ("SSI") benefits under Title XVI, following an administrative law

---

[1] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

judge's ("ALJ") decision that Plaintiff was not under a disability within the meaning of the Social Security Act. Administrative Record ("AR") 11, 29. For the reasons stated below, the decision of the Commissioner is REVERSED and the action is REMANDED for further proceedings consistent with this Order.

## II.
## PROCEEDINGS BELOW

On May 31, 2013, Plaintiff applied for SSDI alleging disability beginning on May 12, 2011 (his alleged onset date ("AOD")). AR 14. Plaintiff applied for SSI on August 28, 2013, alleging the same AOD of disability. AR 14. Plaintiff's claim was denied first on October 23, 2013, and upon reconsideration on April 10, 2014. *Id*. Plaintiff then requested an administrative hearing before an ALJ, which occurred on October 28, 2014. *Id*. Plaintiff testified at the hearing, and was represented by counsel. *Id*. A vocational expert (VE) also testified. *Id.* On November 17, 2014, the ALJ found that Plaintiff was not disabled. AR 29. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. AR 1–4. Plaintiff filed the instant action in this Court on April 22, 2015. Dkt. No. 1.

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled. 20 C.F.R. §§ 404.1520, 416.920; *see also Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the AOD. AR 16. At **step two**, the ALJ found the medical evidence established that Plaintiff had the following severe impairments: residual degenerative disc disease of the lumbar spine with left sided radiculopathy, status post back surgery in 2013; post-laminectomy syndrome; and chronic pain syndrome. *Id.* At **step three**, the ALJ found that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 18.

Before proceeding to step four, the ALJ found that Plaintiff possessed the residual functional capacity ("RFC") to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: he can lift, carry, push, and pull up to 10 pounds occasionally and five pounds frequently; he can stand and walk four hours out of an eight-hour workday, but no more than 10 to 15 minutes at a time and he would require an assistive device for longer ambulation; he can sit six hours out of an eight-hour workday, but with brief position changes after 20 to 30 minutes; he can perform postural activities on an occasional basis, except he cannot climb ladders, ropes, or scaffolds; he cannot work at unprotected heights, or around moving machinery or other hazards; he cannot perform fast-paced production or assembly line type work; he can leave occasional non-intense interaction with the general public; he cannot perform repetitive or constant pushing and pulling with the left lower extremity, such as operating foot pedals; and he is precluded from jobs requiring independent decision-making or the responsibility for the safety or direction of others.

AR 19.

At **step four**, the ALJ found that Plaintiff was unable to perform past relevant work. AR 27. At **step five**, the ALJ concluded that Plaintiff could perform the requirements of two representative occupations: file assembler and addresser, and consequently, found Plaintiff not disabled . AR 28-29.

## III.
## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied.

*Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). Substantial evidence is more than a mere scintilla but less than a preponderance. *Id.* at 459. It is relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). Inferences drawn from the record may serve as substantial evidence, but only when *reasonably* drawn. *See Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006).

To determine whether substantial evidence supports a finding, the Court must consider the record as a whole, weighing evidence that supports *and* detracts from the ALJ's conclusion. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted). If evidence can reasonably support either affirming or reversing the ALJ's finding, the reviewing court may not substitute its judgment for that of the ALJ. *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006).

The Court may review only the reasons stated in the ALJ's decision, and may not affirm on a ground on which the ALJ did not rely. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court will not reverse the Commissioner's decision based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the … nondisability determination.'" *Robbins*, 466 F.3d at 885 (quoting *Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006)).

## IV.

## DISCUSSION

Plaintiff raises three claims of error in his Memorandum of Points and Authorities in Support of Motion for Summary Judgment ("Pl. Memo."): (1) the ALJ erred in failing to find that the Plaintiff meets or equals the requirements of Listing 1.04A; (2) the ALJ erred by failing to provide specific, legitimate reasons for rejecting Plaintiff's treating physicians' opinions; and (3) the ALJ erred in her evaluation of Plaintiff's credibility and subjective symptoms. Pl. Memo. at 2-8. In

her motion for summary judgment ("Def. Memo."), the Commissioner asserts that: (1) the ALJ properly evaluated the medical evidence and that plaintiff did not meet or equal a listed impairment; (2) the ALJ properly considered the opinions of Plaintiff's workers' compensation doctors; and (3) the ALJ properly found Plaintiff not fully credible. (Def. Memo. at 3-9.)

### A.   Evidence in the Record

#### 1. Medical History

Plaintiff sustained a work-related injury in September 2010. AR 42. He underwent back surgery in March 2013. As part of a workers' compensation claim, Plaintiff saw numerous physicians, including Dr. Frederick W. Close, M.D., Dr. Kamran Aflatoon, D.O., and Dr. Donald D. Kim, M.D., had multiple MRIs taken of his back, underwent back surgery, and continued to seek treatment post-surgery when his back pain persisted. Plaintiff's medical history was comprehensively summarized by the ALJ and is recited, in pertinent part, as follows:

On April 7, 2011, a MRI of Plaintiff's lumbar spine revealed disc protrusion at L4-5 resulting in mild deviation of the left L5 nerve root, mild central canal stenosis. AR 21.

On May 12, 2011, Dr. Close performed an initial orthopedic examination and consultation in relation to Plaintiff's workers' compensation claim. His examination findings revealed antalgic gait referable to the left lower extremity, bilateral lumbar spasm, decreased range of motion at the lumbar spine, and positive straight-leg raising. AR 21. Dr. Close diagnosed Plaintiff with herniated intervertebral disc at L4-5 and radiculopathy at the left lower extremity. AR 21. Dr. Close opined that Plaintiff was "temporarily totally disabled" for purposes of his workers' compensation claim.

On June 17, 2011, Dr. Aflatoon, a board certified orthopedic surgeon, performed an initial orthopedic consultation of Plaintiff for purposes of his workers' compensation claim. AR 22. His examination findings revealed a normal

gait, decreased range of motion of the lumbar spine, paraspinal spasm, sciatic notch tenderness, and positive straight-leg raising. AR 22. Dr. Aflatoon diagnosed Plaintiff with disc herniation at L4-5 and radiculopathy. Dr. Aflatoon opined that Plaintiff's work status included no lifting of more than five pounds or bending or squatting. AR 22.

In June 2011, Plaintiff had a follow-up evaluation with Dr. Close. Dr. Close diagnosed Plaintiff with herniated intervertebral disc at L4-5 on the left and radiculopathy at the left lower extremity. AR 22. His examination findings found, *inter alia*, decreased range of motion at the lumbar spine and positive straight-leg raising. AR 22.

On June 30, 2012, Dr. Kim performed an initial orthopedic evaluation of Plaintiff in relation to his workers' compensation claim. AR 22. Dr. Kim's examination findings included: plaintiff walked with a cane on the right side; decreased range of motion at the thoracolumbar spine; exquisite tenderness in the right and left L4-5 and L5-S1 region; positive straight-leg raising on the left; severely antalgic gait on the left lower extremity; and significantly reduced sensation at the anterior aspect of the left leg. AR 22. Dr. Kim diagnosed Plaintiff with left L4-5 herniated nucleus pulposus with a severe chronic left lower extremity radiculopathy and recommended Plaintiff undergo surgery. AR 22.

Medical reports dated in August and November 2012 continued to find tenderness at L4-5 and L5-S1 and decreased range of motion at the lumbar spine. AR 23. Additionally, Dr. Close diagnosed Plaintiff with muscle atrophy at the left lower extremity. AR 23.

On March 19, 2013, Plaintiff had surgery for his herniated disc. AR 23. An MRI performed on Plaintiff's lumbar spine on July 17, 2013, showed some post-surgery improvement in Plaintiff's condition, in particular, that the residual bulging disc had decreased in size. AR 23.

///

In September 2013, during a medical evaluation, Plaintiff reported experiencing continued pain in his lower back and left leg, but stated that the pain level was reduced and was under control with pain medication. AR 23. Examination findings showed Plaintiff still had a slight limp and was using a cane, that he had one-centimeter left calf atrophy, straight leg raising was positive but improved, and decreased range of motion at the lumbar spine. AR 23. Dr. Close diagnosed Plaintiff with disc disease of the lumbar spine and chronic radiculopathy at the left lower extremity. AR 24. While Dr. Close determined that Plaintiff remained temporarily totally disabled, he also found that Plaintiff did not have recurrent disc herniation at L4-5 as his straight-leg raising had improved and he had only minimal atrophy. AR 24.

On October 4, 2013, Dr. Kim performed a re-evaluation of Plaintiff. Dr. Kim's examination found that Plaintiff continued to have a mild to moderate limp and required the use of a cane. AR 24. Additionally, Plaintiff had positive straight leg raising at the left in the sitting and supine position, sensation was diminished in the left leg, and that an MRI showed post-surgical scar tissue formation. Dr. Kim diagnosed Plaintiff with left L4-5 herniated nucleus pulposus with a deviation of the left L5 nerve root and recurrent left lower extremity radiculopathy with postoperative scarring, left lateral recess stenosis, and a four-millimeter persistent bulge at L4-5. AR 24. Dr. Kim opined that Plaintiff might be a candidate for repeat surgery. AR 24.

Dr. Close performed a follow-up examination of Plaintiff in December 2013. His examination findings showed one-centimeter left calf atrophy and positive straight-leg raising with decreased range of motion at the lumbar spine. AR 24. Dr. Close diagnosed Plaintiff with degenerative disc disease of the lumbar spine, status post lumbar laminectomy and discectomy at L4-5 on the left and chronic radiculopathy at the left lower extremity. AR. 24.

///

On April 12, 2014, Dr. Kim conducted a re-evaluation of Plaintiff and found that Plaintiff continued to walk with a cane and had decreased range of motion at the thoracolumbar spine, exquisite tenderness in the left L4-5 and L5-S1 region, and positive straight-leg raising. AR 24-25. Dr. Kim diagnosed Plaintiff with left L4-5 herniated nucleus pulposus and recurrent left lower extremity radiculopathy. AR 25.

2. <u>Testimony</u>

An administrative hearing took place on October 28, 2014, and lasted 23 minutes. AR 36, 53. Plaintiff testified that he was unable to work. AR 40. He stated that he was waiting to have a second surgery, a back fusion surgery, because his first surgery failed and the pain was increasing. Id. He described that he could not put on his clothes (boxers, socks, pants) without the assistance of his wife. He listed the pain medication he takes to manage his symptoms, including oxycodone, hydrocodone, and tramadol, among others. AR 41. He indicated that he could drive for only short distances, requires the use of a cane, and has to lay down at home on a daily basis to manage his pain. AR 44. When asked about his lifting and carrying ability, he stated that he could lift and carry "[m]aybe five pounds without it causing great pain. I mean, if I had to max it out to deal with the pain, maybe 10, if that." AR 43. On a pain scale from zero to 10, with 10 being excruciating pain, Plaintiff rated his daily level of pain as a "seven and a half, eight." AR 47.

3. <u>The ALJ Decision</u>

In arriving at Plaintiff's RFC and her conclusion that Plaintiff was not disabled under the Social Security Act, the ALJ found that the "conclusions and disability statements" of Drs. Aflatoon, Close, and Kim had "no probative value" and rejected them. AR 25. The ALJ provided three reasons for doing so. First, the ALJ noted that the determination of disability is an issue reserved to the Commissioner. Second, the ALJ found that Dr. Aflatoon's opinion about Plaintiff's

functional capacity were inconsistent with other evidence of record, including Plaintiff's testimony at the administrative hearing that he could lift up to 10 pounds. AR 25. Finally, the ALJ found that the credibility and relevance of these three doctors' opinions was negatively affected by the fact that they were obtained in relation to Plaintiff's workers' compensation claim. AR 25. Earlier in her decision, the ALJ provided her observations about physicians employed by claimants in the workers' compensation scheme:

> Some of the medical records were reports prepared in the context of the adversarial workers' compensation claim system []. Medical reports generated in the context of a workers' compensation claim are adversarial in nature. The physicians retained by either party in the context of workers' compensation cases are often biased and do not provide truly objective opinions. The claimant's treating physician in the context of a workers' compensation claim often serves as an advocate for the claimant and describes excessive limitations to enhance the claimant's financial recovery.

AR 25.

With respect to whether Plaintiff met or equaled a listing impairment, the ALJ stated:

> The undersigned considered the claimant's medically determinable physical impairments, singly and in combination, under Section 1.00 of the Listing of Impairments. The claimant's impairments, considered singly and in combination, do not meet or medically equal the criteria of any medical listing. No treating or examining physician has recorded findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment.

AR 18.

Finally, the ALJ determined that Plaintiff was less than fully credible, finding that his allegations of pain were inconsistent with the objective medical evidence and with his daily activities.[2] AR 20.

## B. The ALJ's Consideration of Plaintiff's Workers' Compensation Doctors

### 1. Weight of Treating Physicians' Opinions

In determining whether a claimant is disabled, among the evidence the ALJ considers is medical evidence. 20 C.F.R. § 404.1527(b). In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 494.1527(c), (e); *Lester*, 81 F.3d at 830. "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *see generally* 20 C.F.R. § 404.1527(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to know and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). "[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31). "Where such an opinion is contradicted, however, it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record.'" Id. (quoting Lester, 81 F.3d at 830-31).

/ / /

---

[2] The ALJ's decision also discusses the opinions of a consultative orthopedic doctor as well as the opinions of state agency medical consultants, opinions which the ALJ ultimately gave limited weight. AR 26.

Conclusory statements unsupported by the record within a medical examiner's opinion warrant the assignment of little weight. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue,* 688 F.3d 661, 671 (9th Cir. 2012) (quoting *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009)); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (citing to *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)).

2. <u>Analysis</u>

In reviewing the ALJ's decision for "specific and legitimate reasons" that are supported by substantial evidence in the record, the Court's review finds evidence of a bias against Plaintiff's workers' compensation doctors. It is well settled that an ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding, or because it is couched in the terminology used in such proceedings. *Booth v. Barnhart*, 181 F.Supp.2d 1099 (2002); *cf. Lester*, 81 F.3d at 832 ("the purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them. An examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner.") (citation omitted). Thus, the ALJ cannot ignore the opinions of physicians given in the context of workers' compensation scheme because those opinions were offered in that context. Here, the ALJ made categorical assumptions based on the treating physicians' involvement with Plaintiff's workers' compensation claim, instead of individualized assessments of each physician's opinions and clinical findings. This was error.

Notwithstanding evidence of the ALJ's bias against Plaintiff's workers' compensation treating physicians, the Court examines the ALJ's decision for legally sufficient reasons to reject the opinions of Drs. Aflatoon, Close, and Kim.

11

An ALJ must evaluate medical opinions phrased in the terminology of state workers' compensation schemes just as she would evaluate any other medical opinion. *Booth*, 181 F.Supp.2d at 1105. In analyzing such medical opinions, the ALJ "is entitled to draw inferences 'logically flowing from the evidence.'" *Id*. at 1106 (quoting *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996)). "The ALJ's decision, however, should explain the basis for any material inference the ALJ has drawn from those opinions so that meaningful judicial review will be facilitated." *Booth*, 181 F.Supp.2d at 1106.

With respect to the opinions of Drs. Aflatoon, Close, and Kim indicating that the Plaintiff was "temporarily totally disabled," the ALJ rejected these conclusions and statements as having "no probative value." AR 25. The ALJ further stated that, because these doctors examined Plaintiff "solely in the context of a workers' compensation claim," the credibility and relevance of their opinions was negatively affected. AR 25. These are not specific and legitimate reasons for rejecting the opinions of Drs. Aflatoon, Close, and Kim.

The ALJ's decision offered one example of why the opinions of Plaintiff's three treating physicians should be rejected. The ALJ noted that Dr. Aflatoon's opinion of Plaintiff's limitation was inconsistent with other evidence of record, in particular, Plaintiff's own testimony that he could lift up to 10 pounds. AR 25. However, a review of Plaintiff's testimony in context shows that Plaintiff stated he could lift up to 10 pounds "if [he] had to max it out" and that it would be painful. AR 43. This testimony is not inconsistent with Dr. Aflatoon's assessment that Plaintiff was not capable of lifting more than five pounds. The ALJ provided no other examples of inconsistencies between Plaintiff's treating physicians' opinions and the objective medical record.

In sum, the Court finds that the ALJ failed to provide specific and legitimate reasons for rejecting the opinions of Drs. Aflatoon, Close, and Kim.

///

**C.     The ALJ's Finding that Plaintiff Did Not Meet a Listing Requirement**

Next, Plaintiff contends that the evidence of record clearly establishes that he met or equaled the criteria for Listing 1.04A. (Pl. Memo. at 2-5.) The Commissioner responds that Plaintiff's subjective belief, unsupported by evidence in the record, fails to establish that his impairments meet or equal Listing 1.04A. (Def. Memo. at 3-5.)

1. <u>Pertinent Law</u>

At step three of the evaluation process, the ALJ must determine whether a claimant has an impairment or combination of impairments that meets or equals a condition in the Listing. 20 C.F.R. §§ 404.152(d), 416.920(d). "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis v. Apfel*, 236 F.3d 503, 512 (9h Cir. 2001) (citing *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). "The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity[.]" *Sullivan v. Zebley,* 493 U.S. 521, 532, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (emphasis in original). If a claimant's impairment (or combination of impairments) meets or equals a "listed impairment[], the claimant is conclusively presumed to be disabled. If [it] is not one … conclusively presumed to be disabling, the evaluation proceeds to" step four. *Bowen v. Yuckert,* 482 U.S. 137, 141, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); *see also Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999).

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett,* 180 F.3d at 1099 (emphasis in original); *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 207 L.Ed.2d 967 (1990) (to meet a listing, a claimant's impairments "must meet all of the specified medical criteria"). "To *equal* a listed impairment, a

claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment 'most like' the claimant's impairment." *Tackett*, 180 F.3d at 1099. (emphasis in original) (citing 20 C.F.R. § 404.1526).

Listing 1.04 requires a finding of disability for an individual who (a) has a "[d]isorder [] of the spine," (b) that results in compromise of a nerve root or the spinal cord, and (c) which is accompanied by the additional requirements set forth under section 1.04A, 1.04B, or 1.04C. 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04. Section 1.04A requires "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." *Id.* § 1.04A.

2. <u>Analysis</u>

As recounted and summarized in the ALJ's decision, numerous medical records from different treating physicians document Plaintiff's impairments relating to his lumbar spine and left leg impairment, and provide objective support for Plaintiff's reports of pain and other subjective complaints. Thus, the Commissioner's argument that Plaintiff offers only his subjective belief, without record evidence, in support of his claim of meeting or equaling a listing impairment is not borne out by the record. Further, the Court finds that the Commissioner's assertion that because Dr. Close and Dr. Kim found improvement in Plaintiff's condition, Plaintiff's claim is without merit. As Plaintiff points out in his Reply, the record is more nuanced. While Dr. Close found some improvement in straight-leg raising, Dr. Close also noted that his examination found "a 1-cm left calf atrophy. Straight leg raising is positive, but now at 90 degrees rather than the previously 45 degrees." (AR 528.) While Plaintiff's "clinical findings have

improved somewhat … [t]he patient has been advised that he may always have numbness in the left leg." (AR 528.)

Unfortunately, the ALJ's conclusory, boilerplate finding that Plaintiff did not meet or equal a listing impairment does not facilitate an adequate review by this Court. While the ALJ's decision summarizes the medical evidence in the record, the decision does not address the criteria of the listing impairments. And, as recited above, numerous medical evaluations showing, for example, positive straight-leg raising, muscle atrophy, numbness, reduced range of motion, among other findings, suggest that Plaintiff may have met at least one or more of the criteria of Listing 1.04A.

Accordingly, the Court finds remand is appropriate to allow the ALJ to address in a non-conclusory manner whether Plaintiff meets or equals the Listing Impairment 1.04A.[3]

### D. Remand Is Appropriate

The Court has discretion to decide whether to remand for further proceedings or order an immediate award of benefits. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Under the credit-as-true rule, the court should remand for an award of benefits if three conditions are met: "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman*, 211 F.3d at 1178. In this case, remand for further proceedings is the appropriate remedy. As discussed above, the ALJ did not properly weigh Plaintiff's treating physicians' opinions. Further, on remand, the

---

[3] Because the Court concludes remand is appropriate, it does not reach Plaintiff's third claim – that the ALJ erred in her evaluation of Plaintiff's credibility and subjective symptoms.

15

ALJ can further develop the record in evaluating whether or not Plaintiff meets or equals a listing impairment. Accordingly, remand is appropriate.

## V.
## CONCLUSION

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for further proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: February 29, 2016

*/s/ Rozella A. Oliver*
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

## NOTICE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**